Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANNETTE ALARCON on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KEURIG DR PEPPER INC.**<br><br>**Defendant.** | **CASE NO.: 2:26-cv-8697**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Annette Alarcon ("Plaintiff"), individually and on behalf of herself and all others similarly situated, brings this class action against Defendant Keurig Dr Pepper Inc. ("KDP" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California class of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Nantucket Nectars Juice Blend Cocktails ("Products") which claim to be made with "All Natural Ingredients."[1]







[1] Class Products include: Nantucket Nectars Big Cranberry, Orange Mango, Peach Orange, Pineapple Orange Banana, Pineapple Orange Guava, Pomegranate Pear, Red Plum, Watermelon Strawberry Apple, Lemonade, Red Plum, Pomegranate. Commonly, each Nantucket Nectar bears the "All Natural Ingredients" representation and includes citric acid as an ingredient.







2. Unfortunately, the claim that the Products are made with "All Natural Ingredients" is false and misleading, because each of the Products contains manufactured citric acid — an industrially produced, synthetic ingredient that is neither derived from fruit nor is "natural" under any recognized standard, policy, or definition of that word.

3. Despite unequivocally and prominently claiming on the principal display panel of every Product that the Products are made with "**All Natural Ingredients**," the inclusion of manufactured citric acid belies this representation, rendering it false, misleading, and in violation of the law.

4. Defendant knows that consumers are willing to pay more for products that are labeled as natural because they perceive them to be healthier, less processed, and more wholesome alternatives to similar products containing synthetic and industrially manufactured ingredients. Indeed, Defendant advertises the Products with the intention that consumers rely on the representation made on the packaging that the Products are made with "All Natural Ingredients."

5. Reasonable consumers such as Plaintiff do not have the specialized knowledge necessary to identify various ingredients in the Products as being

inconsistent with Defendant's advertised claim that the Products are made with "All Natural Ingredients." Nor are consumers able to determine, from the ingredient list or otherwise, whether the citric acid used in the Products was extracted from fruit or manufactured through industrial fermentation and chemical recovery. Defendant alone possesses that information.

6. By falsely labeling the Products as being made with "**All Natural Ingredients**," Defendant has profited from consumers' preference for products that are perceived to be healthier by being devoid of artificial, synthetic or otherwise non-natural ingredients.

7. Throughout the applicable Class Periods (defined below), Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California.

8. Plaintiff alleges that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* California Civil Code § 1750, *et seq*., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Alarcon is a resident of Lancaster, California. Defendant Keurig Dr. Pepper is a Delaware corporation jointly headquartered in Massachusetts and Texas. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the

Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

11. Plaintiff Alarcon is a resident of Lancaster, California.

12. Ms. Alarcon has purchased Orange Mango and Pomegranate Pear flavors of Defendant's Product on several occasions over the past 3 years from Walmart stores in Lancaster.

13. When Ms. Alarcon purchased the Products she saw the representation on their labels claiming that they were made with All Natural Ingredients. It was a material representation on which she relied in making her decision to purchase the Products.

14. Ms. Alarcon believed the representations on the Products' labels were accurate, particularly in that they contained only natural ingredients and were devoid of synthetic or industrially manufactured ingredients.

15. Ms. Alarcon believed that Defendant lawfully marketed and sold the Products.

16. Ms. Alarcon relied on Defendant's labeling and was misled thereby.

17. Ms. Alarcon would not have purchased the Products, or would have purchased the Products on different terms had she known the truth about their contents.

18. Ms. Alarcon was injured in fact and lost money as a result of Defendant's improper conduct.

19. If Ms. Alarcon has occasion to believe that Defendant's marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendant's Products in the future.

20. Defendant Keurig Dr Pepper Inc. is a Delaware corporation with principal executive offices in Burlington, Massachusetts and Frisco, Texas. KDP is one of the largest beverage companies in North America, with a portfolio of more than 150 brands, including Nantucket Nectar.[2] Defendant formulates, manufactures, markets, distributes, labels, and sells the Products at issue in this action, and is responsible for the content of the Products' labels.

## GENERAL ALLEGATIONS

### A. The Products and the Challenged Representation

21. The Products are ready-to-drink juice beverages sold under the Nantucket Nectars brand in single-serve bottles through supermarkets, convenience stores, mass merchants, club stores, and online retailers throughout California and the United States.

22. The principal display panel of each Product bears the phrase "**All Natural Ingredients**" in prominent script immediately above the Nantucket Nectars brand name, adjacent to a photographic vignette of whole fresh fruit. The representation appears on the front of the package, in the consumer's direct line of sight at the point of sale.

23. The ingredient deck on the back of the label indicates that each Product contains citric acid. The label makes no disclosure whatsoever concerning the source, method of manufacture, or synthetic character of the citric acid. Nothing on the label discloses that the citric acid is not derived from fruit, but rather is synthetic.

---

[2] https://en.wikipedia.org/wiki/List_of_Keurig_Dr_Pepper_brands (last visited August 5, 2026).

### B. The Citric Acid Used in Defendant's Product is Artificial

24. Citric acid is among the most common food additives used today. Citric acid's primary use is as a preservative, despite potentially having additional functions.[3] It occurs naturally in certain fruits and vegetables and historically was extracted from citrus fruits such as lemons. While "[t]he average consumer [][remains] under the impression that the added citric acid listed in the ingredients of prepared foods, beverages and vitamins is derived from natural sources such as lemons and limes," … the ingredient list is quite misleading since the added citric acid is not procured through natural sources. More accurate terminology would list this substance as *manufactured citric acid ("MCA")*."[4]

25. As commercial demand for citric acid increased, scientists sought alternative means to produce it and in the early 20th century discovered that citric acid could be acquired more cheaply through a chemical fermentation process – the method by which nearly all the commercially available citric acid is produced today.[5] The overwhelming majority of this manufactured citric acid is made using a mutant strain of the black mold *Aspergillus niger*.[6]

---

[3] FBC Industries, *Citric Acid: One of The Most Important Preservatives in The World,* Available at https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited June 10, 2026).

[4] Sweis, I, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, Toxicology Reports (2018) ("Sweis"). Available at https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/.

[5] Independent Chemical, *Comon Uses of Citric Acid*, April 1, 2019. Available at https://independentchemical.com/blogs/common-uses-of-citric-acid-20045.aspx (last visited June 10, 2026).

[6] Sweis, Supra n. 4.

26. As explained by the United States Department of Agriculture Agricultural Marketing Service ("USDA AMS"), "[t]raditionally by extraction from citrus juice, [citric acid is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[7]

27. In addition to the chemical processing, the *Aspergillus niger* mold strains used in the production of MCA have themselves been subjected to extensive genetic modification, resulting in countless generations of genetically modified mutant variants specialized for industrial-scale economics.[8]

28. The U.S. Environmental Protection Agency ("EPA") has published a supply chain profile for citric acid that illustrates its industrial manufacturing process. The process begins with a corn substrate — corn starch that has been enzymatically hydrolyzed into glucose syrup by industrial enzymes. *A. niger* is introduced and subjected to deliberate metabolic stress — trace metal starvation, excess carbon, and forced low pH — to produce calcium citrate. The citric acid is then recovered and refined through methods including the lime/sulfuric acid method, the solvent

[7] NOSB Materials Database, Citric Acid, Chemistry. Available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%201995.pdf (last visited June 10, 2026).

[8] Serge Gregoire, *Avoid citric acid: a mold byproduct!* (July 13, 2021), available at https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/ (last visited August 5, 2026).

extraction method, or the ion exchange method, commonly using industrial chemicals such as sulfuric acid and calcium hydroxide.[9]




### C. Manufactured Citric Acid Is Synthetic Under Governing Federal Standards

29. By all accounts, MCA is synthetic and artificial. This conclusion does not rest on the mere fact that citric acid is produced by fermentation. It rests on the chemical processing that necessarily follows fermentation, on the synthetic reagents and solvents that process employs, and on the residues of those synthetic substances that remain in the finished ingredient.

30. **First**, the federal government's controlling definition of "synthetic" turns on the *process* by which a substance is made, not on whether the resulting molecule also occurs somewhere in nature. The USDA's National Organic Program defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources." 7 C.F.R. § 205.2. MCA is manufactured by precisely such a process.

[9] EPA, *Citric Acid Supply Chain Profile*, available at https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last visited August 5, 2026).

31. **Second**, applying that standard, the National Organic Standards Board expressly determined that citric acid produced by fermentation of carbohydrate substrates and purified by the lime–sulfuric acid method "is synthetic because the citric acid comes into contact with lime and sulfuric acid and because of the chemical change from citric acid to calcium citrate and then back to citric acid during purification."[10] The molecule that emerges from that process is not the molecule that entered it; it has been chemically converted to a calcium salt and then chemically reconverted.

32. **Third**, the alternative recovery route — solvent extraction — employs expressly synthetic, petroleum-derived reagents, and FDA regulations confirm that residues of those synthetic reagents *remain in the finished citric acid*. The FDA has codified the "[s]olvent extraction process for citric acid" at 21 C.F.R. § 173.280, which provides that recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be used to produce food-grade citric acid where "[t]he solvent used in the process consists of a mixture of *n*-octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine." 21 C.F.R. § 173.280(a) (emphasis added).

33. Critically, the same regulation provides that these synthetic petroleum-derived solvents are *not* fully removed. Subsection (d) provides that "[c]urrent good manufacturing practice results in residues not exceeding 16 parts per million (ppm) *n*-octyl alcohol and 0.47 ppm synthetic isoparaffinic petroleum hydrocarbons in citric acid," and subsection (e) provides that "[t]ridodecyl amine may be present as a residue in citric acid at a level not to exceed 100 parts per billion." 21 C.F.R. § 173.280(d)–(e). The "synthetic isoparaffinic petroleum hydrocarbons" referenced in the regulation

---

[10] NOSB Materials Database, OFPA Criteria § 2119(m)(3), available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%201995.pdf (last visited August 5, 2026).

are, by FDA's own definition, "produced by synthesis from petroleum gases." 21 C.F.R. § 172.882(a). Food-grade citric acid recovered by this process therefore does not merely undergo a synthetic process — it *contains* synthetic, petrochemical-derived substances as a matter of design.

34. **Fourth**, the FDA has itself determined that the addition of citric acid precludes a "natural" claim. The FDA has sent warning letters to food manufacturers for using the term "natural" or "all natural" on products containing citric acid. In a warning letter to Hirzel Canning Company, the FDA stated that its policy regarding the use of the term "natural" "means that nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food," and that "the addition of calcium chloride and citric acid to these products preclude use of the term 'natural' to describe this product."[11] The FDA issued a substantially identical warning to Oak Tree Farm Dairy, Inc., stating that use of the terms "100% Natural" and "All Natural" was inappropriate "because it contains citric acid."[12]

35. **Fifth**, at its most basic level, the ordinary dictionary definition of "artificial" — something made or produced by human beings through industrial processes, as opposed to occurring naturally — squarely applies to MCA. *See*, *e.g.*, "made, produced, or done by humans especially to seem like something natural";[13] "made by people, often as a copy of something natural."[14] Manufactured citric acid,

---

[11] FDA Warning Letter to Hirzel Canning Company (Aug. 29, 2001), attached hereto as Exhibit A.

[12] FDA Warning Letter to Oak Tree Farm Dairy, Inc. (Aug. 16, 2001), attached hereto as Exhibit B.

[13] Merriam-Webster, available at https://www.merriam-webster.com/dictionary/artificial (last visited July 28, 2026).

[14] Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/artificial (last visited July 28, 2026).

which is produced through industrial fermentation using genetically modified mold strains, chemical reagents including mineral acids, and synthetic petroleum-derived solvents, plainly qualifies as artificial under any common understanding of the term.

36. Defendant is one of the largest beverage manufacturers in North America. It manufactures the Products at industrial scale across multiple production facilities in the United States and sells them through national distribution channels. Given the industrial scale of Defendant's operations and the fact that fruit-extracted citric acid is no longer commercially available in quantities capable of supplying such operations, Defendant does not — and could not — source the citric acid used in the Products from natural citrus fruit extraction. Like virtually all commercial food and beverage manufacturers, Defendant uses industrially manufactured citric acid produced through the *Aspergillus niger* fermentation and chemical recovery processes described above. The citric acid in Defendant's Products is artificial.

**D. Consumer Demand For Natural Products**

37. The clean label movement has been called "the largest shift in American food habits since World War II."[15] The term encompasses many things, but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[16] Consumer interest in clean labels is driven by health concerns. A recent survey found that healthfulness was among the biggest drivers of food-

---

[15] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited June 15, 2026).

[16] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited June 15, 2026).

purchasing decisions and that that "no artificial ingredients" is the top ways Americans define healthy eating.[17] Nearly 70% of consumers say they would pay more for food and beverage products with a clean label.[18]

38. By representing the Products consist of "all natural ingredients," Defendant seeks to capitalize on consumer preference for clean label products. Indeed, foods bearing claims like these are increasingly relevant to Americans, as they perceive the products as closely tied to health.[19]

39. "Naturalness [] has moved from a premium differentiator to a non-negotiable. Some 69% of consumers globally say the more natural a product feels, the more they believe it supports long-term health. One in three say that a "made with natural ingredients" claim alone is enough to make an indulgent product feel healthier. Naturalness has crossed a threshold[.]…. "It used to be a nice-to-have or a premium positioning tool — now its table stakes. When nearly seven in ten consumers globally link naturalness to long-term health, that's not a trend, that's a baseline expectation that brands can't afford to get wrong."[20]

---

[17] International Food Information Council. 2016 Food & Health Survey: consumer Attitudes toward Food Safety, Nutrition & Health, commissioned by the International Food Information Council (IFIC) Foundation. 2016 Food & Health Survey https://ific.org/wp-content/uploads/2025/04/2016-Food-and-Health-Survey-Report_-FINAL_0.pdf. (last visited June 15, 2026).

[18] https://www.kalsec.com/natural-food-protection/insights/clean-label-food-preservation. (last visited June 15, 2026).

[19] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed June 15, 2026).

[20] Food Ingredients 1st, Global Ingredient Trends 2026: Navigating consumer demand for health-driven formulas, March 24, 2026. Available at

40. In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated among the most important claims were "no artificial ingredients" and "all natural."[21]

Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)




Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

41. By failing to properly label its Products, Defendant has misled and deceived consumers in violation of the laws pled herein.

42. As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

---

https://www.foodingredientsfirst.com/news/ingredients-health-tools-innova-trends.html. (last visited July 29, 2026).

[21] L.E.K., https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited August 30, 2024); Food Industry Executive, Consumers Say They Want to Eat Healthy, March 4, 2019. Available at https://foodindustryexecutive.com/2019/03/consumers-say-they-want-to-eat-healthy/ (last visited June 15, 2026).

**NO ADEQUATE REMEDY AT LAW**

43. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

44. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

45. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.,* the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

46. Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

47. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements

that the Product's challenged representations is not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

48. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

49. Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

50. Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

51. Plaintiff saw and relied on Defendant's misleading labeling of its Products.

52. Plaintiff believed that the purchased Products consisted of "All Natural Ingredients."

53. Plaintiff believed that the Products were lawfully marketed and sold.

54. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid a price premium.

55. As a result of her reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which she reasonably believed they did not contain.

56. Plaintiff received Products that were unlawfully marketed and sold.

57. Plaintiff lost money and thereby suffered injury as she would not have purchased these Products and/or paid as much for them absent the misrepresentation.

58. Defendant knows that the claim that the Products contain "All Natural Ingredients" is material to a consumer's purchasing decision.

59. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Products they purchased, and/or in additional amounts attributable to the deception.

60. By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

61. Plaintiff, however, would be willing to purchase Products again in the future should she be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the Class Period.

b. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[22]

[22] The statute of limitations for Plaintiff's claims under California Civil Code § 1750, *et seq*., and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing to the present. Plaintiff's claims

63. Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

64. Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

65. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

66. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

67. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;
b. Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;
c. Whether Defendant participated in and pursued the common course of conduct complained of herein;
d. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;
e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

---

under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years.

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

h. Whether Defendant should be enjoined from continuing the above-described practices;

i. Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

68. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased Defendant's Products. Plaintiff is no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

69. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

70. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential

for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

71. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

72. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Breach of Express Warranty
### Cal. Com. Code §2313

73. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

74. Defendant made express warranties to Plaintiff and members of the Class that the Products contained "All Natural Ingredients."

75. The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

76. Plaintiff and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

77. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

78. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

79. Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**Unlawful" Business Practices in Violation of The Unfair Competition Law ("UCL") Bus. & Prof. Code §§17200, *et seq*.)**

80. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

81. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

82. A business act or practice is "unlawful" if it violates any established state or federal law.

83. Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 U.S.C. §§331 and 333, which prohibits the introduction of misbranded foods into interstate commerce.

84. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 as the food labeling regulations of California. Cal. Health & Safety Code §§110100(a), 110665, 110670.

85. As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

86. Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

87. Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and

Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds or otherwise violates the FDCA.

88. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

89. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

90. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## THIRD CAUSE OF ACTION

**(“Unfair” Business Practices in Violation of The Unfair Competition Law (“UCL”), Bus. & Prof. Code §§ 17200, *et seq*.)**

91. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

92. The UCL defines unfair business competition to include any “unlawful, unfair or fraudulent” act or practice, as well as any “unfair, deceptive, untrue or misleading” advertising. Cal. Bus. Prof. Code §17200.

93. A business act or practice is “unfair” under the Unfair Competition Law if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

94. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

95. Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

96. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## FOURTH CAUSE OF ACTION

**("Fraudulent" Business Practices in Violation of The Unfair Competition Law ("UCL") Bus. & Prof. Code §§ 17200, *et seq.*)**

97. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

98. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

99. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

100. Defendant's acts and practices of mislabeling its Products in a manner to suggest they contained "all natural ingredients."

101. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

102. Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

103. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## FIFTH CAUSE OF ACTION

**(False Advertising in Violation of California Business & Professions Code §§ 17500, *et seq*.)**

104. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

105. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code

§§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

106. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

107. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

108. Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq*., as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

109. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

110. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched, and pray for relief as set forth below.

## SIXTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.)**

111. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

112. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

113. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

114. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e), and the Products constitute "goods" within the meaning of Civil Code §1761(a).

115. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

116. Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

117. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels, which formed a material basis for their decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted

from their Product labels, reliance may be presumed or inferred for all members of the Class.

118. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

119. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as Plaintiff and California Subclass Members.

120. In conjunction with this Complaint Plaintiff has served a CLRA demand pursuant to Civil Code §1782 notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendant fails to take corrective action within thirty days, Plaintiff will amend the complaint to seek the full measure of damages as provided under Civil Code §1780.

121. Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1782. If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

**SEVENTH CAUSE OF ACTION**

**Restitution Based On Quasi-Contract/Unjust Enrichment**

122. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

123. Defendant's conduct in enticing Plaintiff and the Class to purchase Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

124. Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

125. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

126. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Other statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: August 6, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*