Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANNETTE ALARCON, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KEURIG DR PEPPER INC.,**<br><br>**Defendant.** | **CASE NO.: 2:26-cv-08697-PD**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: November 13, 2026<br>Time: 10:00 a.m.<br>Courtroom: 580<br><br>Hon. Patricia Donahue |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENT .......... 3

A. Standard on a Motion to Dismiss .......... 3

B. The Complaint Plausibly Alleges That Defendant's Products Contain Manufactured Citric Acid .......... 3

C. Reasonable Consumers Would Not Expect a Manufactured Synthetic Ingredient in a Product Labeled "All Natural" .......... 7

D. Plaintiff Has Standing To Pursue Claims For Substantially Similar Products She Did Not Purchase .......... 12

E. Plaintiff Has Standing To Seek Injunctive Relief .......... 15

IV. CONCLUSION .......... 16


**a**

## TABLE OF AUTHORITIES

**Cases**

*Albrigo v. Chobani, LLC*, No. 3:24-cv-01418-BJC-KSC, 2025 U.S. Dist. LEXIS 133672 (S.D. Cal. July 11, 2025)..........................7, 8

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012)..................13

*Ang v. Bimbo Bakeries USA, Inc.* No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)............................13

Antossyan v. Kroger Co., No. CV 25-5165-GW-MBKx, 2025 U.S. Dist. LEXIS 202749 (C.D. Cal. Oct. 14, 2025)...........................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..............................................................3

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)...........................14

*Balser v. Hain Celestial Group, Inc.*, 640 Fed. App'x 694 (9th Cir. 2016)...............8

*Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016)...........8, 11

Brown v. Stored Value Cards, Inc., 953 F.3d 567 (9th Cir. 2020)..........................16

*Carbine v. Target Corp.*, No. CV 24-03721-MWF (AJRx), 2025 U.S. Dist. LEXIS 27427 (C.D. Cal. Feb. 13, 2025)...........5, 7, 9, 12, 15

*Corpuz v. Bayer Corp.*, No. 22-cv-1085-MMA (JLB), 2023 U.S. Dist. LEXIS 33558 (S.D. Cal. Feb. 28, 2023) ...............................8

*Cortez v. Post Consumer Brands, LLC*, No. 2:25-cv-02321-DJC-JDP, 2026 U.S. Dist. LEXIS 48221 (E.D. Cal. Mar. 9, 2026) ........................13, 16

*Davidson v. Kimberly Clark Corp.*889 F.3d 956 (9th Cir. 2018)............................15

*Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018)....................................3

*Foman v. Davis*, 371 U.S. 178 (1962)....................................................................17

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012)......................13

*Fried v. Snapple Bev. Corp.*, 753 F. Supp. 3d 1145 (S.D. Cal. 2024) ..................6, 9

*Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23, 2017).............................8

*Gradney v. Polar Bevs.*, No. 25-cv-02149-EMC, 2026 U.S. Dist. LEXIS 133762 (N.D. Cal. June 12, 2026) ............................9

*Hayes v. Kraft Heinz Co.*, 2024 U.S. Dist. LEXIS 206010 (N.D. Ill. Nov. 13, 2024) ...........................................................................6, 7

*Herrera v. Reed's, Inc.*, No. 26-cv-756-RSH-JLB, 2026 U.S. Dist. LEXIS 234954 (S.D. Cal. Oct. 14, 2026).............6, 7, 10, 16

*Iglesias v. Ariz. Beverages USA, LLC*, No. 22-cv-09108-JSW, 2023 U.S. Dist. LEXIS 105119 (N.D. Cal. June 16, 2023) ..........................14

*Joukjian v. Dr. Pepper/Seven Up, Inc.*, No. 2:25-cv-04771-MRA-JC, 2026 U.S. Dist. LEXIS 86446 (C.D. Cal. Apr. 17, 2026)............................10

*Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021)...........................14

*Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021)...................................7

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) .........13

*Orozco v. Target Corp.*, No. CV 2:25-CV-07254, 2026 U.S. Dist. LEXIS 31735 (C.D. Cal. Feb. 10, 2026).......................13, 15

*Otto v. Abbott Labs.*, No. 5:12-cv-01411-SVW-DTB, 2013 U.S. Dist. LEXIS 202888 (C.D. Cal. Aug. 2, 2013)...........................13

*Palmer v. Coca-Cola Co.*, No. CV 25-4777-GW-AGRx, 2025 U.S. Dist. LEXIS 199686 (C.D. Cal. Oct. 8, 2025).........................5, 10

*Peters v. Keurig Dr Pepper Inc.*, No. 25-CV-4410 (MKB), 2026 U.S. Dist. LEXIS 200910 (E.D.N.Y. Sept. 4, 2026).............................7

*Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229 (C.D. Cal. 2025) ...............4, 14

*Rojas v. Gen. Mills, Inc.*, No. 12-cv-05099-WHO,
2014 U.S. Dist. LEXIS 41315 (N.D. Cal. Mar. 26, 2014) .......... 14

*Rosado v. Project 7, Inc*., No. 26-cv-06632-NW,
2026 U.S. Dist. LEXIS 232868 (N.D. Cal. Oct. 12, 2026) .......... 6, 10

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc*.,
547 F. Supp. 2d 939 (E.D. Wis. 2008) .......... 12

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*,
708 F.3d 1109 (9th Cir. 2013) .......... 17

*Souter v. Edgewell Pers. Care Co.*, No. 22-55898,
2023 U.S. App. LEXIS 20301 (9th Cir. Aug. 7, 2023) .......... 16

*Squeo v. Campbell Soup Co.*, 2024 U.S. Dist. LEXIS 192003
(N.D. Cal. Oct. 22, 2024) .......... 6

*Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) .......... 3

*TAKANO v. P&G*, No. 2:17-cv-00385-TLN-AC,
2018 U.S. Dist. LEXIS 182777 (E.D. Cal. Oct. 23, 2018) .......... 13

*Taylor v. Walmart, Inc.*, 789 F. Supp. 3d 774 (C.D. Cal. 2025) .......... 5

*Valencia v. Snapple Beverage Corp*., No. 23-CV-1399 (CS),
2024 U.S. Dist. LEXIS 48493 (S.D.N.Y. Mar. 18, 2024) .......... 7

*Vales v. Pierre Fabre Dermo-Cosmetique USA, Inc*., No. 25-cv-10523-BLF
(N.D. Cal. Apr. 10, 2026) .......... 16

*Ward v. Pepperidge Farm, Inc*., 773 F. Supp. 3d 10 (S.D.N.Y. 2025) .......... 7

*Williams v. Cove Drinks, Inc.*, No. 26-cv-03374-H-JLB,
2026 U.S. Dist. LEXIS 220973 (S.D. Cal. Sept. 28, 2026) .......... 10

*Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008) .......... 8, 9

*Wysocki v. Chobani, LLC*, 828 F. Supp. 3d 1061 (S.D. Cal. 2026) .......... 8

*Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) .......... 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 3
Fed. R. Civ. P. 15(a)(2) .......... 16
Fed. R. Civ. P. 23 .......... 13

**Regulations**

21 C.F.R. § 10.85(k) .......... 12
21 C.F.R. § 173.280 .......... 2
7 C.F.R. § 205.2 .......... 11

## I. INTRODUCTION

This is a proposed class action on behalf of a California class of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Nantucket Nectars Juice Blend Cocktails ("Products").

The Products claim boldly on their front label to be made with "All Natural Ingredients." Contrary to this representation, however, the Products contain manufactured citric acid – an industrially produced, synthetic ingredient that is neither derived from fruit, nor is "natural" under any recognized standard, policy, or definition thereby rendering the label claim false, misleading, and in violation of the law.

Defendant Keurig Dr Pepper Inc. ("KDP") seeks to dismiss Plaintiff's Complaint and advances four arguments: (1) the Complaint does not plausibly allege that the citric acid in Nantucket Nectars is manufactured citric acid; (2) Plaintiff's definition of the term natural is arbitrary, therefore no reasonable consumer could be misled by Defendant's "All Natural Ingredients" claim; (3) Plaintiff lacks standing to pursue claims for Product flavors she did not purchase; and (4) Plaintiff lacks standing to seek injunctive relief.

As detailed below, none of these arguments are meritorious, nor sufficient to compel dismissal of this Complaint.

## II. STATEMENT OF FACTS

KDP is one of the largest beverage companies in North America. Compl. ¶¶ 20, 36.[1] It manufactures Nantucket Nectars juice blend cocktails at industrial scale and sells them in single-serve bottles throughout California. *Id.* ¶¶ 21, 36. The principal display panel of every flavor bears the phrase "All Natural Ingredients" in prominent

[1] All "¶" references are to Plaintiff's Complaint For Damages, Equitable, Declaratory, and Injunctive Relief. Dkt. No. 1.

script directly above the brand name, beside images of whole fresh fruit. *Id.* ¶¶ 1 & n.1, 22. The ingredient list on each bottle discloses "citric acid," but nothing about its source or method of manufacture. *Id.* ¶ 23.

Although citric acid occurs naturally in fruit, extraction from fruit has been commercially abandoned and that commercial citric acid is now manufactured by fermenting corn-derived glucose with genetically modified mutant strains of the black mold *Aspergillus niger*. *Id.* ¶¶ 24–28. The same is confirmed by the U.S. Department of Agriculture, which states that citric acid made "[t]raditionally by extraction from citrus juice" is "no longer commercially available." *Id.* ¶ 26. After fermentation, the citric acid is recovered either by precipitation with lime and sulfuric acid, a process the National Organic Standards Board deemed "synthetic," or by solvent extraction with petroleum-derived reagents that FDA regulations acknowledge remain as residues in the finished ingredient. *Id.* ¶¶ 29–33 (citing 21 C.F.R. § 173.280(d)–(e)). The FDA has issued warning letters stating that products containing such citric acid may not be labeled "natural." *Id.* ¶ 34 & Exs. A–B. Given the scale of KDP's operations and the unavailability of fruit-extracted citric acid in commercial quantities, KDP "does not — and could not" use fruit-extracted citric acid in the Products. *Id.* ¶ 36.

Plaintiff purchased the Orange Mango and Pomegranate Pear flavors on several occasions at Walmart stores in Lancaster, relying on the "All Natural Ingredients" representation. *Id.* ¶¶ 12–17. She would purchase the Products again if she could rely on the labeling. *Id.* ¶¶ 19, 61. She asserts claims under the UCL, FAL, and CLRA and for breach of express warranty and unjust enrichment on behalf of a California class of purchasers of every Nantucket Nectars flavor bearing the challenged representation. *Id.* ¶¶ 62, 73–120.

## III. ARGUMENT

### A. Standard on a Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleadings fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189 at *5-6 (S.D. Cal. Jan. 3, 2018).

### B. The Complaint Plausibly Alleges That Defendant's Products Contain Manufactured Citric Acid

Plaintiff alleges that citric acid is among the most common food additives used today. ¶24. While it occurs naturally in certain fruits and vegetables it can also be industrially synthetized through a chemical process by which a genetically modified strain of a black mold, *Aspergillus niger* (a mutant strain of a black mold which has been subject to extensive genetic modification to make it suitable for industrial-scale usage), is fermented. Citric acid is then recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then re-acidulated with sulfuric acid. ¶26. The Complaint makes these assertions bolstered by citations to academic, industry and governmental sources.¶¶24-28.

Due to high demand, nearly all the commercially available citric acid today is produced this way. ¶25. Defendant is one of the largest beverage manufacturers in North America. ¶¶20, 36. It manufactures the Products at industrial scale across multiple production facilities in the United States. ¶26. "Given the industrial scale of Defendant's operations and the fact that fruit-extracted citric acid is no longer commercially available in quantities capable of supplying such operations, Defendant does not — and could not — source the citric acid used in the Products from natural citrus fruit extraction. Like virtually all commercial food and beverage manufacturers, Defendant uses industrially manufactured citric acid produced through the *Aspergillus niger* fermentation and chemical recovery processes described above. The citric acid in Defendant's Products is artificial." ¶36.

Defendant contends that because citric acid "can" be natural, the Complaint's theory that KDP's Product contains MCA is an unsupported "analytical leap" and therefore should be dismissed. Mot. at 2.[2] That argument, however, ignores the Complaint's specific allegations, misconstrues the pleading standard, and has been routinely rejected by California courts that have considered it.

Multiple Court's in this Circuit have considered this very same argument, on near identical facts, and have routinely upheld complaints finding such allegations to be  non-conclusory and otherwise sufficient to withstand a motion to dismiss.

For example, in *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1238-39 (C.D. Cal. 2025), plaintiff alleged that a line of Smucker's Natural Fruit Spread products, which claimed to be "natural" and "made with ingredients from natural sources," was misleadingly labeled because the product contained MCA. Defendant sought to dismiss arguing that plaintiff made only general allegations about the world's production of citric acid but failed to make any non-conclusory allegations

[2] Defendant's Notice of Motion and Motion to Dismiss Class Action Complaint; Memorandum of Points and Authorities in Support Thereof ("Mot."). Dkt. No. 22.

about defendant's use of citric acid in its products. The Court disagreed finding plaintiff's allegations that: (1) defendant uses artificially manufactured citric acid in the products, which is manufactured using a black mold called *Aspergillus niger*; (2) chemical solvents are used in the manufacturing process, the residues of which remain in defendant's products; and (3) numerous academic articles affirm that it is not commercially feasible to use natural citric acid extracted from fruits and that the citric acid in defendants products is MCA were sufficient to withstand a motion to dismiss. "[T]he Court finds that Plaintiff's Complaint goes beyond conclusory allegations of a common industry practice and is sufficiently detailed to provide enough factual support to raise Plaintiff's right to relief above a speculative level." *Id.* at 1238. The holding of *Ringler* is echoed by a number of other Courts both in and outside of this jurisdiction. S*ee, e.g., Palmer v. Coca-Cola Co.*, No. CV 25-4777-GW-AGRx, 2025 U.S. Dist. LEXIS 199686, at *29 (C.D. Cal. Oct. 8, 2025)(Plaintiff expressly alleges that the citric acid used in the Class Products is industrially synthesized and supports her allegations with, *inter alia*, scientific articles describing how the limited supply of natural citric acid necessitates biotechnological fermentation processes); *Carbine v. Target Corp.*, No. CV 24-03721-MWF (AJRx), 2025 U.S. Dist. LEXIS 27427, at *8 (C.D. Cal. Feb. 13, 2025)( "Plaintiff begins by alleging that the citric acid used in the products is produced using heavy chemical processing….Plaintiff then alleges based on a scholarly article in *Toxicology Reports* that "99% of the world's production of [manufactured citric acid] is carried out using the fungus *Aspergillus niger* since 1919 ….. Following this chain of reasoning, the allegation is fundamentally that Defendant manufactures citric acid, making it very likely that Defendant utilizes *aspergillus niger*, which is a known allergen with several noted adverse health effects." "[T]aking the allegations in the Complaint as true and drawing all inferences in favor of Plaintiff, she has established a plausibility that the citric acid in the products is artificially produced"); *Taylor v. Walmart, Inc.*, 789 F. Supp. 3d 774, 784-85 (C.D. Cal. 2025)(Finding allegations that citric acid that is derived from "heavy chemical

processing" involving a modified "type of black mold called *Aspergillus niger"*; a method that accounts for roughly 99% of global citric acid production since 1919; along with supporting academic sources and citation to warning letters from the FDA claiming citric acid is not natural were allegations sufficient to survive a motion to dismiss); *Squeo v. Campbell Soup Co.*, 2024 U.S. Dist. LEXIS 192003 at *9 (N.D. Cal. Oct. 22, 2024) ("Plaintiffs' well-supported allegations render it highly likely that the citric acid included in the [food product] was artificially produced"); *Hayes v. Kraft Heinz Co.*, 2024 U.S. Dist. LEXIS 206010 at *8 (N.D. Ill. Nov. 13, 2024) (finding that the plaintiffs had drawn a sufficient connection between the industry practice of using artificial citric acid and the defendants' practices when "Plaintiffs' complaint goes beyond simple allegations of a common industry practice" and "Plaintiffs incorporate by reference several academic studies and articles describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety"); *Fried v. Snapple Bev. Corp.*, 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024)("Even if, as Defendant points out, citric acid can "be made naturally, here [P]laintiff alleges that th[is] ingredient[] w[as] not produced naturally, and the [C]ourt must accept th[is] non-conclusory factual allegation[] of the [C]omplaint in the light most favorable to [P]laintiff."); *Herrera v. Reed's, Inc.*, No. 26-cv-756-RSH-JLB, 2026 U.S. Dist. LEXIS 234954, at *2 (S.D. Cal. Oct. 14, 2026)(allegation that fruit extraction is "unavailable at the scale of Defendant's commercial operations" sufficient "to permit a reasonable inference, at the pleading stage, that the citric acid used in the Products is produced through the alleged industrial fermentation process"); *Rosado v. Project 7, Inc.*, No. 26-cv-06632-NW, 2026 U.S. Dist. LEXIS 232868, at *5–6 (N.D. Cal. Oct. 12, 2026); *Albrigo v.*

*Chobani, LLC*, No. 3:24-cv-01418-BJC-KSC, 2025 U.S. Dist. LEXIS 133672, at *22–23 (S.D. Cal. July 11, 2025).[3]

The Complaint makes the same allegations, bolstered by the same academic, industry and governmental authorities and ties it to a Defendant that produces a Product (among many others) at industrial scale. For the same rationale advanced in the cases above, Plaintiff's well-pled allegations regarding Defendant's use of MCA should be sustained.

### C. Reasonable Consumers Would Not Expect a Manufactured Synthetic Ingredient in a Product Labeled "All Natural"

KDP next argues that Plaintiff's understanding of "natural" is "entirely arbitrary" because fermentation starts with corn, because fruit-extracted citric acid historically went through a similar lime-and-sulfuric-acid recovery, because "[c]itric acid, however produced, is exactly the same chemical," and because the regulatory materials cited in the Complaint are "inapposite." Mot. at 2–4. While these arguments are specious at best, critically, none can be resolved at this stage of the pleadings.

[3] KDP does not cite, but may raise in its reply, two New York decisions dismissing "all natural" citric-acid claims against KDP's Snapple brand under New York General Business Law §§ 349–350: *Peters v. Keurig Dr Pepper Inc.*, No. 25-CV-4410 (MKB), 2026 U.S. Dist. LEXIS 200910 (E.D.N.Y. Sept. 4, 2026), and *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 2024 U.S. Dist. LEXIS 48493 (S.D.N.Y. Mar. 18, 2024). Neither should carry weight here. Both apply a Second Circuit pleading framework that California courts have declined to adopt. *Peters* acknowledged the distinction, expressly setting aside the California decisions discussed above as "not helpful" because they "interpret other state's laws." *Peters*, 2026 U.S. Dist. LEXIS 200910, at *42 n.9. California courts, in turn, have found *Valencia* unpersuasive where, as here, the plaintiff alleges that manufactured citric acid carries synthetic residues. ¶¶ 29, 32-33.*Carbine*, 2025 U.S. Dist. LEXIS 27427, at *13 ("In contrast to *Valencia*, Plaintiff here does contend that the manufactured citric acid contains something synthetic"); *Albrigo*, 2025 U.S. Dist. LEXIS 133672, at *22–23; *Herrera*, 2026 U.S. Dist. LEXIS 234954 at 13 n.3; ¶¶ 32–33. Additionally, courts in New York are themselves divided. *See, e.g., Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143–44 (S.D.N.Y. 2021) (sustaining "All-Natural" claim premised on *Aspergillus niger* citric acid containing synthetic solvents); *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 20 (S.D.N.Y. 2025) (distinguishing *Valencia* and sustaining manufactured-citric-acid claim).

Ninth Circuit jurisprudence has made clear that, at the motion to dismiss stage, a reasonable consumer could understand representations that use terms such as "100% natural" or "natural," modified by other terms connoting that it is "all natural," to mean "that a product does not contain any non-natural ingredients." *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2017 U.S. Dist. LEXIS 175273 at *14 (N.D. Cal. Oct. 23, 2017); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (holding that the evidence could support a finding that "All Natural Fruit" labeling was misleading to a reasonable consumer because the products contained synthetic citric and ascorbic acids); *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008)("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *Balser v. Hain Celestial Group, Inc.*, 640 Fed. App'x 694 (9th Cir. 2016) ("the statements that the products were 'natural' and '100% vegetarian' could be taken as a claim that no synthetic chemicals were in the products, a claim the complaint alleges, in detail, is false"). *See also*, *Albrigo v. Chobani, LLC*, No. 3:24-cv-01418-BJC-KSC, 2025 U.S. Dist. LEXIS 133672, at *23 (S.D. Cal. July 11, 2025) ("Plaintiff has sufficiently pled that the inclusion of stevia extract, monk fruit extract, and [manufactured citric acid] in products labeled 'Only Natural Ingredients' is likely to deceive a reasonable consumer under the UCL and FAL."); *Corpuz v. Bayer Corp.*, No. 22-cv-1085-MMA (JLB), 2023 U.S. Dist. LEXIS 33558 (S.D. Cal. Feb. 28, 2023); *Wysocki v. Chobani, LLC*, 828 F. Supp. 3d 1061, 1068 (S.D. Cal. 2026)("Reasonable consumer could interpret 'Only Natural Ingredients' representation on Greek yogurt to mean product contains 100% natural ingredients and 0% non-natural substances, making presence of phthalates (even trace amounts) potentially misleading at motion to dismiss stage").

The Court in *Carbine v. Target Corp.*, No. CV 24-03721-MWF (AJRx), 2025 U.S. Dist. LEXIS 27427, at *14 (C.D. Cal. Feb. 13, 2025) explains that it "cannot, at this motion-to-dismiss stage, make such a fact-intensive determination about what a reasonable consumer would do when faced with facts about the use of manufactured citric acid in the products, as alleged. The Complaint cites figures suggesting that at least some consumers strongly weigh 'free-from' claims in their shopping decisions, and Plaintiff alleges that she would have refrained from buying the products or would have paid less for them if she was aware that the citric acid used was artificial. What a reasonable consumer might have done is a fact question more appropriate for resolution on summary judgment or before a jury. *Cf. Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (finding that whether a product is deceptive will usually be a fact question not appropriate for resolution on demurrer)." The same is true here, where Plaintiff has alleged she "would not have purchased the Products, or would have purchased the Products on different terms had she known the truth about their contents" ¶17 (i.e., "or paid less for them") ¶78.

Moreover, where "[p]laintiffs have, in their pleading, addressed why a reasonable consumer might care: because the "100% Natural" label plays on the "clean" movement promoting "clean" products, [t]hat this issue might be re-examined in the context of, *e.g.*, a motion for summary judgment does not warrant dismissal at this juncture." *Gradney v. Polar Bevs.*, No. 25-cv-02149-EMC, 2026 U.S. Dist. LEXIS 133762, at *4 (N.D. Cal. June 12, 2026). Similarly, here, Plaintiff explains that consumers care and are willing to pay a premium for "clean-label" products, among which the most important considerations are that the products contain "no artificial ingredients" and are "all natural." ¶¶37-42. *Fried v. Snapple Bev. Corp.*, 753 F. Supp. 3d 1145, 1152-53 (S.D. Cal. 2024)("Assuming Defendant's Products contain MCA, it is plausible that a reasonable consumer is 'likely to be deceived' by Defendant's "ALL NATURAL" labeling on its Products." Moreover, "questions regarding how

consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss").

KDP's assertion that citric acid "however produced, is exactly the same chemical," Mot. at 3, is a factual contention outside the Complaint, and courts have refused to resolve it on a motion to dismiss. In *Herrera*, the defendant argued that fruit-derived and mold-derived citric acid are produced through the same metabolic pathway. The court held that even accepting that representation, "whether reasonable consumers would regard citric acid produced through the alleged industrial process using *Aspergillus niger* as 'natural' is a disputed factual question that is not appropriate for resolution at this stage of the case." *Herrera v. Reed's, Inc.*, No. 26-cv-756-RSH-JLB, 2026 U.S. Dist. LEXIS 234954, at fn.2 and *15 (S.D. Cal. Oct. 14, 2026)( "At a minimum, whether reasonable consumers would regard citric acid produced through the alleged process as inconsistent with the challenged representations at issue here presents a fact intensive question not appropriately resolved at this stage of the proceedings"); *Williams v. Cove Drinks, Inc.*, No. 26-cv-03374-H-JLB, 2026 U.S. Dist. LEXIS 220973, at *8 (S.D. Cal. Sept. 28, 2026) (whether fermentation-derived ingredient is artificial "is a question of fact that the Court cannot decide at the motion to dismiss stage").

KDP's argument that fermentation of citric acid is natural because the process begins with corn, Mot. at 2, fares no better. Three courts have rejected the parallel argument that manufactured citric acid is "natural" because it begins with sugar, one of them a case in which KDP is the defendant. *Joukjian v. Dr. Pepper/Seven Up, Inc.*, No. 2:25-cv-04771-MRA-JC, 2026 U.S. Dist. LEXIS 86446 at *11–12 (C.D. Cal. Apr. 17, 2026); *Palmer v. Coca-Cola Co.*, No. CV 25-4777-GW-AGRx, 2025 U.S. Dist. LEXIS 199686, at *31 (C.D. Cal. Oct. 8, 2025)("unpersuaded at this point in the litigation" that citric acid fermented from *Aspergillus niger* is a natural flavor); *Rosado v. Project 7, Inc.*, No. 26-cv-06632-NW, 2026 U.S. Dist. LEXIS 232868 at *5–6 (N.D. Cal. Oct. 12, 2026)("Project 7 may be correct. It may well be that Project

7's citric acid is "derived from a qualifying natural source," and that Project 7 completely removes solvent residues from its citric acid "in accordance with good manufacturing practice." [] But at this stage of the case, Rosado's allegations are sufficient to state claims under the UCL, FAL, and CLRA").[4]

KDP's reliance on an industrial-chemistry encyclopedia, (Mot. at 3), is similarly misplaced as the excerpt describes only how citric acid was "historically" recovered from fruit juice. The Complaint alleges that fruit-extracted citric acid is no longer commercially viable (¶¶ 26, 36), so a description of an abandoned process says nothing about the citric acid used in the Products. Additionally, the Complaint's theory that the MCA is not natural does not rest on processing (*e.g.*, lime-and-sulfuric-acid recovery, etc.) but also on the fact the mold is genetically modified (*i.e.,* non-natural), and is metabolically stressed on solvent extraction that leaves synthetic residues. *Id.* ¶¶ 25, 27–33.

Finally, Plaintiff does not contend that the USDA's organic definition of "synthetic," 7 C.F.R. § 205.2, or the FDA warning letters bind the Court. The Complaint cites them as objective reference points supporting the plausibility of Plaintiff's interpretation, Compl. ¶¶ 30–34. The Ninth Circuit treated FDA warning letters about synthetic citric acid as evidence that "could allow a trier of fact to conclude" an "All Natural" label is misleading, noting that the letters "asserted that foods that naturally contain citric acid (such as tomatoes) may not be labeled 'all natural' if synthetic citric acid is added to them." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533 (9th Cir. 2016). *See also Mason v. Reed's Inc., 515 F.*

---

[4] Nor does the Complaint's theory, as KDP claims, mean that "no heated, frozen, pickled, or brined food could be natural." Mot. at 2. The Complaint does not rely on the fermentation process to advance Plaintiff's claim. " By all accounts, MCA is synthetic and artificial. This conclusion does not rest on the mere fact that citric acid is produced by fermentation. It rests on the chemical processing that necessarily follows fermentation, on the synthetic reagents and solvents that process employs, and on the residues of those synthetic substances that remain in the finished ingredient" ¶29. Moreover, freezing orange juice does not create a new ingredient from mold, corn syrup, and chemical reagents.

*Supp. 3d 135, 144 (S.D.N.Y. 2021)*(FDA's views on citric acid and "all natural," including warning letters, are "relevant" though "not dispositive"); *Carbine*, 2025 U.S. Dist. LEXIS 27427, at *9 (FDA letters "tend to establish that a reasonable consumer would find manufactured citric acid 'artificial'").

Neither 21 C.F.R. § 10.85(k) nor *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939 (E.D. Wis. 2008), holds otherwise. Section 10.85(k) provides that an FDA employee's statement does not bind the agency; it says nothing about whether such a statement is relevant evidence of how "natural" is understood. *Schering-Plough* was a Lanham Act dispute between drug manufacturers in which the plaintiff asked the court to treat FDA letters as an agency determination that the defendants' generic laxatives were misbranded and to enforce that determination. The court declined because "the FDA has not yet taken any official position concerning the labeling of the defendants' products to which the court can defer," and granting relief would require the court "to step into the shoes of the FDA." *Id.* at 946–47. Plaintiff asks for nothing of the kind. She does not ask the Court to enforce an FDA ruling, only to accept as plausible a consumer understanding of "natural" that FDA itself has applied to citric acid in a beverage. Compl. Exs. A–B.

### D. Plaintiff Has Standing To Pursue Claims For Substantially Similar Products She Did Not Purchase

Plaintiff purchased Orange Mango and Pomegranate Pear, two of the elven flavors in which  Defendant's Product is available. ¶1, fn.1. Each of these flavors commonly bears the "All Natural Ingredients" representation on the front label and includes citric acid as an ingredient. KDP argues that Plaintiff lacks standing as to Nantucket Nectars flavors she did not buy. Mot. at 5. The majority of Courts in this Circuit hold otherwise.

Although, "[t]here is no controlling authority on whether Plaintiffs have standing for products they did not purchase,"  *Miller v. Ghirardelli Chocolate Co.*,

912 F. Supp. 2d 861, 868 (N.D. Cal. 2012), the majority of courts considering this issue have applied the "substantial similarity" test. *Otto v. Abbott Labs.*, No. 5:12-cv-01411-SVW-DTB, 2013 U.S. Dist. LEXIS 202888 at *23-24 (C.D. Cal. Aug. 2, 2013), *aff'd*706 F. App'x 349 (9th Cir. 2017) (collecting cases)( "The majority of courts have adopted the rule that a plaintiff may have standing to assert claims based on products he or she did not purchase so long as the accused products and alleged misrepresentations are 'substantially similar'"). "If the misleading aspects of both the purchased and unpurchased products can be examined without a 'context-specific analysis of each product's label,' the products are substantially similar." *TAKANO v. P&G*, No. 2:17-cv-00385-TLN-AC, 2018 U.S. Dist. LEXIS 182777, at *11 (E.D. Cal. Oct. 23, 2018) (quoting *Ang v. Bimbo Bakeries USA, Inc.* No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)); *Cortez v. Post Consumer Brands, LLC*, No. 2:25-cv-02321-DJC-JDP, 2026 U.S. Dist. LEXIS 48221, at *8 (E.D. Cal. Mar. 9, 2026)( Where plaintiff alleged dog foods were commonly advertised as having no artificial preservatives but contained manufactured citric acid, "[a] context-specific analysis is not necessary at this stage because the asserted claims share a common labeling practice"). In *Orozco v. Target Corp.*, No. CV 2:25-CV-07254, 2026 U.S. Dist. LEXIS 31735, at *20-21 (C.D. Cal. Feb. 10, 2026), the Court held that plaintiff had standing to represent products he did not purchase because "all the products in question are dog food, purchased for similar purposes, and bearing the same alleged misrepresentation" (*e.g.,* 'No Artificial Preservatives' but contained MCA). Moreover, "a specific inquiry into whether Plaintiff may assert claims on behalf of purchasers of products is best addressed in the class certification process." *Id.; See,* Fed. R. Civ. P. 23; *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (denying a motion to dismiss and reasoning that "the argument is better taken under the lens of typicality or adequacy of representation, than standing"); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012)(finding "[t]here is sufficient similarity between the products

purchased . . . because the same alleged misrepresentation was on all of the [products] regardless of flavor" and all of the products contained the same challenged ingredients); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371 *13 (N.D. Cal. July 20, 2012)("Plaintiffs are challenging the same kind of food products…. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors"); *Rojas v. Gen. Mills, Inc.*, No. 12-cv-05099-WHO, 2014 U.S. Dist. LEXIS 41315, at *29-34 (N.D. Cal. Mar. 26, 2014); *Antossyan v. Kroger Co.*, No. CV 25-5165-GW-MBKx, 2025 U.S. Dist. LEXIS 202749, at *11–14 (C.D. Cal. Oct. 14, 2025) (substantial similarity is met when products "contain common ingredients or share alleged misrepresentations on the labels") (citation omitted); *Iglesias v. Ariz. Beverages USA, LLC*, No. 22-cv-09108-JSW, 2023 U.S. Dist. LEXIS 105119 (N.D. Cal. June 16, 2023) (flavors of "All Natural" juice cocktails and teas substantially similar despite some differing ingredients).[5]

The Products here satisfy every factor described in these cases. Each is a Nantucket Nectars juice blend cocktail sold in the same single-serve bottle, made and labeled by the same Defendant. ¶¶ 1 & n.1, 21. Each bears the identical "All Natural

---

[5] KDP's reliance on *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1238-39 (C.D. Cal. 2025) and *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021) is misplaced. Both adopted what courts recognize as the minority view. *Antossyan v. Kroger Co*., No. CV 25-5165-GW-MBKx, 2025 U.S. Dist. LEXIS 202749 at *12 (C.D. Cal. Oct. 14, 2025). *Lorentzen* is also factually distinct. It involved eight coffee products, each stating that it "makes about" a different number of cups, where "[t]he number varies depending on the size of the Product" and falsity was alleged through laboratory testing. 532 F. Supp. 3d at 905–06. Whether any one product's claim was false depended on its own size, number, and test results. Here, the representation is identical, word for word, on every bottle, and the alleged falsity (i.e., claim of "All Natural Ingredients" when using MCA) is the same for every flavor. *Lorentzen* also expressly declined to decide "the implications of its ruling on the scope of products that may be included in any potential class action." *Id.* at 909 n.5. *Ringler* did not apply the substantial-similarity test at all.

Ingredients" representation in the same location on the principal display panel. *Id.* ¶ 22. Each contains the same challenged ingredient. *Id.* ¶ 23 & n.1. The only difference among them is the fruit flavor, which has no bearing on whether "All Natural Ingredients" is true. The resolution of Plaintiff's claim as to Orange Mango and Pomegranate Pear will resolve the claim as to every other flavor.

Accordingly, the same should result here.

**E. Plaintiff Has Standing To Seek Injunctive Relief**

Finally, KDP argues that because Plaintiff alleges that commercially available citric acid is manufactured, she will always know that any citric acid listed on the label is manufactured, and so can never be deceived again. Mot. at 4–5.

Parties agree that the holding in *Davidson v. Kimberly Clark Corp.*889 F.3d 956 (9th Cir. 2018) governs. In *Davidson*, the Ninth Circuit held that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm. *Id.* at 969. Cases involving the use of MCA fall squarely into this scenario. See, *e.g., Carbine v. Target Corp.*, 2025 U.S. Dist. LEXIS 27427, 2025 WL 501829, *6 (Finding plaintiff had sufficiently alleged lack of an adequate remedy at law case involving use of MCA with products labeled "no artificial colors, flavors, or preservatives"); *Orozco v. Target Corp.*, No. CV 2:25-CV-07254, 2026 U.S. Dist. LEXIS 31735, at *23 (C.D. Cal. Feb. 10, 2026)(Where plaintiff alleges dog food containing MCA was misleadingly labeled as containing no artificial preservatives the Court found that Plaintiff plausibly alleged facts "sufficient to establish Plaintiff's standing to seek injunctive relief to redress potential future harm from Defendant's alleged misrepresentations to purchasers of the Products"); *Cortez v. Post Consumer Brands, LLC*, No. 2:25-cv-02321-DJC-JDP, 2026 U.S. Dist. LEXIS 48221, at *13-14 (E.D.

Cal. Mar. 9, 2026)( Plaintiff alleges here that "she desires to purchase the Product again if the labels of the products were accurate and if the products actually contained 'No Artificial . . . Preservatives.' However, as a result of Defendant's ongoing representations, [she] is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products." These allegations are sufficient"). *See also Herrera, 2026 U.S. Dist. LEXIS 234954* at *18 (allegation that plaintiff "wishes to rely on Reed's labeling in the future but cannot do so" sufficient under *Davidson*); *Vales v. Pierre Fabre Dermo-Cosmetique USA, Inc.*, No. 25-cv-10523-BLF, 2026 U.S. Dist. LEXIS 79504, at *10 (N.D. Cal. Apr. 10, 2026)(sustaining injunctive standing where consumer was "not sophisticated in the chemistry, manufacturing, and formulation" of citric-acid-containing products); *Souter v. Edgewell Pers. Care Co.*, No. 22-55898, 2023 U.S. App. LEXIS 20301, at *4–5 (9th Cir. Aug. 7, 2023) (ordinary consumers have "very little scientific background").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

As this is the Court's first consideration of Plaintiff's pleading, to the extent the Court finds the Complaint deficient in any respect, Plaintiff requests leave to amend. Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted with "extreme liberality," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020), and may be denied "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*,

708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). None of these factors is present here.

DATED: October 19, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**

Peter N. Wasylyk (pro hac vice)
**LAW OFFICES OF PETER N. WASYLYK**

Counsel for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Annette Alarcon, certifies that this brief contains 4,853 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 19, 2026

Michael D. Braun